Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PHIL BURGE,<br><br>     Plaintiff,<br><br>    v.<br><br>PATTERN ENERGY GROUP, INC., ALAN BATKIN, JOHN BROWNE, MICHAEL GARLAND, DOUGLAS HALL, PATRICIA NEWSON, MONA SUTPHEN, and RICHARD GOODMAN,<br><br>     Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Phil Burge ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.      This is an action against Pattern Energy Group Inc. ("Pattern Energy" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17

1

C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") between Pattern Energy and Pacific US Inc. ("Parent") and Pacific BidCo US Inc. ("Merger Sub").[1]

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company, through its holdings, conducts business in New York.[2]

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

---

[1] Parent is indirectly, wholly owned by Canada Pension Plan Investment Board ("CPPIB"). Merger Sub is a wholly owned direct subsidiary of Parent.

[2] Pattern Energy holds an approximate 29% ownership interest in Pattern Energy Group 2 LP ("Pattern Development"), a developer of renewable energy projects focusing on wind, solar, storage, and transmission with markets around the world.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Pattern Energy's Class A common stock.

7. Defendant Pattern Energy operates as an integrated renewable energy company. The Company is incorporated in Delaware. Pattern Energy has an ownership interest in Pattern Development, which maintains offices in New York.[3] The Company's common stock trades on the NASDAQ Global Select Market under the ticker symbol, "PEGI."

8. Defendant Alan Batkin ("Batkin") is Chair of the Board of the Company.

9. Defendant John Browne ("Browne") is a director of the Company.[4]

10. Defendant Michael Garland ("Garland") is President, Chief Executive Officer, and a director of the Company.

11. Defendant Douglas Hall ("Hall") is a director of the Company.

12. Defendant Patricia Newson ("Newson") is a director of the Company.

13. Defendant Mona Sutphen ("Sutphen") is a director of the Company.

14. Defendant Richard Goodman ("Goodman") is a director of the Company.

15. Defendants Batkin, Browne, Garland, Hall, Newson, Sutphen, and Goodman are collectively referred to herein as the "Individual Defendants."

---

[3] *See* Pattern Energy Enters Agreement to be Acquired by Canada Pension Plan Investment Board, (Nov. 4, 2019), https://www.prnewswire.com/news-releases/pattern-energy-enters-agreement-to-be-acquired-by-canada-pension-plan-investment-board-300950682.html ("Pattern Development has offices in San Francisco, San Diego, Houston, New York, Toronto, Mexico City, and Tokyo.") (last visited Jan. 10, 2020).

[4] Defendant Browne is also referred to as Lord John Browne and Lord Browne.

16. Defendants Pattern Energy and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

17. On November 4, 2019, Pattern Energy and CPPIB issued a press release announcing that they had entered into a definitive agreement pursuant to which CPPIB would acquire Pattern Energy in an all-cash transaction for $26.75 per share. The press release states, in pertinent part:

> **Pattern Energy Enters Agreement to be Acquired by Canada Pension Plan Investment Board**
>
> *Pattern Energy Shareholders to Receive $26.75 per Share in Cash; Transaction Enterprise Value of Approximately $6.1 Billion*
>
> *Canada Pension Plan Investment Board and Riverstone Holdings to Combine Pattern Energy and Pattern Development into an Integrated Renewable Energy Company*
>
> *Transaction Expected to Close by the Second Quarter of 2020*
>
> SAN FRANCISCO and TORONTO and NEW YORK, Nov. 4, 2019 /PRNewswire/ -- Pattern Energy Group Inc. (Nasdaq and TSX: PEGI) ("Pattern Energy" or "the Company") and Canada Pension Plan Investment Board ("CPPIB") today announced they have entered into a definitive agreement, pursuant to which CPPIB will acquire Pattern Energy in an all-cash transaction for $26.75 per share, implying an enterprise value of approximately $6.1 billion, including net debt.
>
> CPPIB and Riverstone Holdings LLC ("Riverstone") have concurrently entered into an agreement pursuant to which, at or following the completion of the proposed acquisition of Pattern Energy by CPPIB, CPPIB and Riverstone will combine Pattern Energy and Pattern Energy Group Holdings 2 LP ("Pattern Development") under common ownership, bringing together the operating assets of Pattern Energy with the world class development projects and capabilities of Pattern Development.
>
> Under the terms of the merger agreement, Pattern Energy shareholders will receive $26.75 in cash consideration for each share of Pattern Energy, representing a premium of approximately 14.8% to Pattern Energy's closing share price on August 9, 2019, the last trading day prior to market rumors regarding a potential

4

acquisition of the Company. The consideration also represents a 15.1% premium to the 30-day volume weighted average price prior to that date.

The Pattern Energy management team, led by Mike Garland, will lead the combined enterprise.

*   *   *

"Pattern Energy is one of the most experienced renewables developers in North America and Japan with a high-quality, diversified portfolio of contracted operating assets, aligning well with CPPIB's renewable energy investment strategy and the increasing global demand for low-carbon energy," said Bruce Hogg, Managing Director, Head of Power and Renewables, CPPIB. "The Pattern Energy management team has a proven track record of identifying and executing development strategies with differentiated competitive advantages. We look forward to working with Pattern Energy and Riverstone to grow the company."

"We have long been believers in Pattern Energy and have had a successful partnership with the Company since we first invested in it more than 10 years ago," said Chris Hunt and Alfredo Marti, Partners at Riverstone. "We have worked closely with Mike and the Pattern Energy team to grow the Company from a development startup into a multinational operator and supplier of low cost, renewably sourced energy. We are confident the team will continue to develop world-class wind and solar assets, which will be an important part of our transition to cleaner forms of power generation. We look forward to continuing to support them in driving the Company's next phase of development."

**Transaction Details**

The transaction is expected to close by the second quarter of 2020, subject to Pattern Energy shareholder approval, receipt of the required regulatory approvals, and other customary closing conditions. The Pattern Energy transaction is not contingent upon the completion of the Pattern Development transaction.

Upon the completion of the transaction, Pattern Energy will become a privately held company and shares of Pattern Energy's common stock will no longer be listed on any public market. Pattern Energy will continue paying its quarterly dividend through the transaction close.

**Advisors**

Evercore and Goldman, Sachs & Co. LLC are acting as independent financial advisors to Pattern Energy's special committee, and Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as independent legal counsel to the special committee.

18. On December 13, 2019, Defendants filed with the SEC a Schedule 14A Preliminary

Proxy Statement pursuant to Section 14(a) of the Exchange Act (the "Proxy Statement") in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

19. The Proxy Statement, which recommends that Pattern Energy shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Pattern Energy's financial projections; (ii) the financial analyses performed by the Board's Special Committee's financial advisor, Evercore Group L.L.C. ("Evercore"), in connection with its fairness opinion; (iii) the sales process leading up to the Proposed Transaction; and (iv) potential conflicts of interest involving Company insiders.

20. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of Our Board and Reasons for the Merger; (ii) Fairness Opinion of Evercore; (iii) Background of the Merger; and (iv) Forecasts.

21. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Pattern Energy shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

#### 1. Material Omissions Concerning Pattern Energy's Financial Projections

22. The Proxy Statement omits material information concerning Pattern Energy's financial projections.

23. The Proxy Statement provides that, "[i]n connection with rendering its opinion, Evercore . . . reviewed certain non-public internal projected financial statements and other non-

public financial and operating data relating to Pattern prepared and furnished to Evercore by management of Pattern, as approved for Evercore's use by Pattern (the "Forecasts")[.]"

24. The Proxy Statement provides that certain financial information concerning Pattern Energy for 2019 to 2027 was provided in the Forecasts, stating in relevant part:

> Evercore performed a discounted cash flow analysis of Pattern to calculate the estimated present value of shares of Company Common Stock by discounting back to present value (1) the standalone, levered, after-tax free cash flows to the equity of Pattern (corporate cash flows, excluding Pattern Development) plus (2) distributions from Pattern Development. ***Pattern Development distributions (net of contributions and preferred interest) for 2019 to 2027 were provided in the Forecasts***.

(Emphasis added.)

25. The Proxy Statement discloses Pattern Energy's financial projections for the years 2020 through 2023.[5] The Proxy Statement fails to disclose all of Pattern Energy's financial projections for 2024 through 2027.[6]

26. This information must be provided because relevant projections through 2027 were included in the management Forecasts and utilized by Evercore in connection with its fairness opinion and analyses.

27. Further, the Proxy Statement fails to provide: (1) all line items used to calculate (a) Adjusted EBITDA, and (b) Corporate EBITDA; and (2) a reconciliation of all non-GAAP to GAAP metrics.

28. The disclosure of Pattern Energy's projected financial information is material

---

[5] The Forecasts also provide that, "[f]or the last two months of 2019, After-Tax Equity Cash Flow was projected to be $26 million."

[6] Indeed, the Proxy Statement only discloses the projections for the "Pattern Development Distributions" from 2020 through 2023 in the "Forecasts" section even though the Company noted elsewhere in the Proxy Statement that the "Pattern Development distributions . . . for 2019 to 2027 were provided in the Forecasts."

because it would provide Pattern Energy shareholders with a basis to project the future financial performance of Pattern Energy and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Pattern Energy and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

29. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Pattern Energy shareholders.

### 2. Material Omissions Concerning Evercore's Financial Analyses

30. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Evercore.

31. The Proxy Statement fails to disclose the following concerning Evercore's "*Selected Public Company Trading Analysis*": (1) the individual multiples and financial metrics of each of the selected companies; (2) the individual inputs and assumptions underlying the (i) CAFD multiple reference range of 11.5x to 13.5x, (ii) dividend yield reference range of 7.25% to 6.25%, (iii) TEV/Adjusted EBITDA multiple reference range of 10.5x to 12.0x, and (iv) discount rate of 12.5% to 17.5%; (3) Pattern Energy's estimated net debt as of November 1, 2019; and (4) the number of fully diluted shares of Company common stock as of November 1, 2019.

32. With respect to Evercore's "*Selected Transactions Analysis*[,]" the Proxy Statement fails to disclose: (1) the individual multiples and financial metrics of each of the selected transactions; (2) the Company's estimated net debt; (3) the value for the Company's ownership in Pattern Development; and (4) the number of fully diluted shares of Company Common Stock as

8

of November 1, 2019.

33. The Proxy Statement fails to disclose the following concerning Evercore's "*Discounted Cash Flow Analysis*": (1) the standalone, levered, after-tax free cash flows to the equity of Pattern Energy; (2) the Pattern Development distributions for 2019, and for 2024 to 2027; (3) the undisclosed line items used to calculate the "standalone, levered, after-tax free cash flow to equity of Pattern"; (4) the terminal values for Pattern Energy; (5) the individual inputs and assumptions underlying the (i) range of multiples of estimated CAFD of 11.5x to 13.5x; (ii) perpetuity growth rates of (1.00)% to 1.00%; and (iii) discount rates ranging from 7.5% to 9.5% and from 12.5% to 17.5%.

34. With respect to Evercore's analysis of equity research analysts' price targets for Pattern Energy common stock, the Proxy Statement fails to disclose the following: (1) the individual price targets for Pattern Energy observed by Evercore in its analysis; and (2) the sources of those price targets.

35. The valuation methods, underlying assumptions, and key inputs used by Evercore in rendering its purported fairness opinion must be fairly disclosed to Pattern Energy shareholders. The description of Evercore's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without this information, the Company's shareholders are unable to fully understand Evercore's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Pattern Energy shareholders.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

36. The Proxy Statement omits material information concerning the sales process

leading up to the Proposed Transaction.

37. The Proxy Statement provides that Pattern Energy entered into confidentiality agreements with various prospective acquirors and/or strategic partners that contained "customary standstill provisions."

38. The Proxy Statement, however, fails to disclose whether the customary standstill provisions within Pattern Energy's confidentiality agreements contained "don't ask, don't waive" ("DADW") provisions (including their time of enforcement) that would preclude a potential buyer from making superior offers for Pattern Energy.

39. Without this information, the Company's shareholders may have the mistaken belief that potential buyers are or were permitted to submit superior proposals for the Company at various points in time, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Pattern Energy shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

40. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Pattern Energy shareholders.

**4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest**

41. The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

42. The Proxy Statement provides that, on August 19, 2019—over two months before Pattern Energy requested "best and final" offers from Party A, Party D, and CPPIB—the Special Committee authorized Pattern Energy management to have discussions with CPPIB regarding compensation and post-transaction roles.

10

43. The Proxy Statement provides that Pattern Energy management and representatives of Evercore and Goldman Sachs met with representatives of CPPIB on August 21, 2019 during which the parties had "high-level discussions regarding arrangements relating to compensation and post-transaction roles for Pattern management."

44. The Proxy Statement, however, fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

45. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

46. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Pattern Energy shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

49. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

50. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

51. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

52. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

53. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or

indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

57. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 10, 2020

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
         zhalper@halpersadeh.com

*Counsel for Plaintiff*